[Cite as *In re R.R.*, 2019-Ohio-2202.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: R.R.

C.A. No.     29279

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     DN 17-06-000477

DECISION AND JOURNAL ENTRY

Dated: June 5, 2019

CARR, Judge.

{¶1}    Appellant, K.I.B. ("Mother"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights and placed her minor child in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.

I.

{¶2}    Mother is the biological mother of R.R., born June 16, 2017. The child's father voluntarily relinquished his parental rights and is not a party to this appeal.

{¶3}    Mother has a history with CSB dating back to 2010. During a prior juvenile court case, two of Mother's older children, K.C. and M.C., were removed from her custody, adjudicated neglected and dependent, and ultimately placed in the legal custody of the father of one of the children.

{¶4} During 2015, Mother gave birth to another child, C.F., who was removed from her custody shortly after birth because the child was born addicted to drugs. Mother admitted using heroin, cocaine, and methamphetamines during her pregnancy with C.F. The primary case plan goals for Mother in that case involved addressing her substance abuse and mental health problems. Mother made little progress on the case plan, however, and C.F. was ultimately placed in the permanent custody of CSB.

{¶5} R.R. was removed from Mother's custody shortly after birth in June 2017. When Mother was admitted to the hospital, she tested positive for multiple illegal drugs and R.R. later exhibited symptoms of drug withdrawal. Mother admitted using opioids and methamphetamines during her pregnancy. She had also exhibited suicidal and erratic behavior before and after the birth of this child. R.R. was later adjudicated a dependent child and placed in the temporary custody of CSB.

{¶6} The case plan goals in this case again focused on Mother addressing her long-standing mental health and substance abuse problems. Mother failed to follow through with treatment, however, and continued to abuse drugs throughout this case. Mother was charged with multiple criminal drug offenses during this case, one of which occurred at the visitation center. When R.R. was six and a half months old, during a supervised visit, mother went to retrieve something from her coat pocket and methamphetamines and drug paraphernalia fell out. As a result, Mother's visits with R.R. were suspended and she was charged with a felony drug offense.

{¶7} On May 1, 2018, CSB moved for permanent custody of R.R. Following a hearing, the trial court terminated Mother's parental rights and placed R.R. in the permanent custody of CSB. Mother appeals and raises one assignment of error.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT'S GRANT OF PERMANENT CUSTODY TO [CSB] WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶8} Mother's sole assignment of error is that the permanent custody decision was not supported by the evidence presented at the hearing. Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another child in a parent's custody has been adjudicated abused, neglected, or dependent on three separate occasions; or the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). *See* R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 99 (1996).

{¶9} The trial court found that CSB satisfied the first prong of the permanent custody test for three alternative reasons under R.C. 2151.414(E), including that Mother's parental rights to an older sibling had been involuntary terminated and Mother failed to rebut the current presumption of her unfitness by presenting "'clear and convincing evidence to prove that, notwithstanding the prior termination, [she] can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child.'" *In re B.E.*, 9th Dist. Medina No. 18CA0074-M, 2019-Ohio-1040, ¶ 18, quoting R.C. 2151.414(E)(11).

{¶10} This Court has repeatedly held that, if one of the trial court's first prong findings is supported by the record, the parent suffers no prejudice from any error in the trial court's

alternative findings. *See*, *e.g.*, *In re U.D.*, 9th Dist. Summit No. 29195, 2019-Ohio-512, ¶ 9. Although Mother challenges two of the trial court's alternative findings under R.C. 2151.414(E), she raises no challenge to the trial court's finding under R.C. 2151.414(E)(11), which was fully supported by the record. CSB presented undisputed evidence that Mother's parental rights to C.F., an older sibling of R.R., were involuntarily terminated by the Summit County Court of Common Pleas, Juvenile Division, on December 6, 2016. Mother failed to present any evidence that, despite the prior termination of her parental rights, she was able to provide R.R. with "a legally secure permanent placement and adequate care for the health, welfare, and safety of the child." R.C. 2151.414(E)(11).

{¶11} Next, the trial court was required to find that permanent custody was in the best interest of R.R. When determining the child's best interest under R.C. 2151.414(D), the juvenile court must consider all relevant factors, including the interaction and interrelationships of the child, the child's wishes, the custodial history of the child, the need for permanence in the child's life, and whether any of the factors set forth in R.C. 2151.414(E)(7) to (11) apply to the facts of the case. R.C. 2151.414(D)(1); *In re R.G.,* 9th Dist. Summit Nos. 24834 and 24850, 2009-Ohio-6284, ¶ 11. Of relevance here, Mother's parental rights had been involuntarily terminated as to an older sibling. *See* R.C. 2151.414(E)(11).

{¶12} During this case, Mother's interaction with her newborn child was limited to supervised visits because of her unresolved mental health and substance abuse problems. While Mother was permitted to visit, her attendance at the visits was sporadic and she sometimes arrived late. When she did attend, she did not interact much with R.R., but was distracted and preoccupied with her cell phone, and she sometimes fell asleep. After drugs were discovered in Mother's possession during one visit, her visits were suspended. Mother's visits were briefly

reinstated several months later, but she was again removed from the visitation schedule because she missed too many visits. At the time of the permanent custody hearing, Mother had seen then 17-month-old R.R. only a few times during the past 10 months.

{¶13} Mother's probation officer testified that, although Mother had been granted treatment in lieu of conviction for her felony drug possession charge, Mother was terminated for failing to comply with its requirements. Mother was placed on community control, but had not reported to her probation officer as required. The consequences of her failure to comply with the community control requirements were not known at the time of the permanent custody hearing because the hearing on her community control violation had not yet been held.

{¶14} R.R. had lived in the same foster home since he was released from the hospital. That foster mother had adopted C.F., R.R.'s older sibling. R.R. had developed a bond with the foster mother, C.F., and the foster mother's biological children. All of R.R.'s needs were being met in that home and the foster mother was interested in adopting him.

{¶15} Because R.R. was only 17 months old at the time of the hearing, the guardian ad litem spoke on his behalf. She opined that permanent custody was in the child's best interest because Mother had failed to adequately address her long-standing mental health and substance abuse problems.

{¶16} R.R. had spent his entire life living in a temporary placement and needed a legally secure permanent home. His parents were not prepared to provide him with a suitable home and CSB had been unable to find any relative who was willing and able to provide the child with a secure home.

{¶17} The trial court was also required to consider the fact that Mother's parental rights to an older sibling had been terminated and she had failed to demonstrate that, despite that prior

termination, she was able to provide this child with a suitable home. *See* R.C. 2151.414(D)(1)(e); R.C. 2151.414(E)(11). Mother failed to present any evidence on her own behalf and the agency's evidence demonstrated that Mother continued to struggle with the same substance abuse and mental health problems that led to the termination of her parental rights to the older sibling.

{¶18} The trial court had clear and convincing evidence before it to support its conclusion that permanent custody was in the best interest of R.R. Mother's assignment of error is overruled.

### III.

{¶19} Mother's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

---

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

CALLAHAN, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

PAMELA A. HAWKINS, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

LINDA SELL, Guardian ad Litem.